MILO D. GOULD v. ANDERSON BOURGEOIS.

51  361
60o 453

1. As a general rule, upon the sale of personal property, the act of selling is an affirmation by the vendor that he is the owner, and is therefore an implied warranty of title.

2. But where the facts and circumstances connected with the transaction show that the purpose of the sale, as it was understood by the parties at the time, was not to convey an absolute and indefeasible title, but only to transfer the title or interest the vendor had in the property, no warranty of title will be implied.

3. In these two propositions there is no distinction between a sale by a vendor who is in possession and a sale where the property is in the possession of a third person. The fact that the vendor is in or out of possession is only a circumstance of more or less weight, according to the nature and circumstances of the particular transaction.

4. The city of H. proposed to build a breakwater. The defendant applied for a contract to do the work. Members of the city council informed him that the contract had already been given to G. & D., and that if the defendant would make satisfactory arrangements with G. & D. the city would give him the contract. The defendant thereupon made a contract with G. & D., whereby, for a consideration, G. & D. assigned to the defendant "all our right, title and interest in a certain contract entered into by the authorities of the city of H. and ourselves to build a certain breakwater ordered built by a resolution passed April 14th, 1887." The city, subsequently, on the advice of counsel that it had no power to build a breakwater, refused to ratify the arrangement of the defendant with G. & D., and abandoned the project of constructing the work. In an action on a note given by the defendant as part of the consideration of the assignment—*Held,*

1. That there was no implied warranty by G. & D. of the validity of their contract with the city.

2. That the transaction was the purchase of G. & D.'s interest in the contract, to consummate an arrangement whereby those parties were to be got out of the way that the city might give the defendant a contract, and that the defendant having obtained by the assignment all he bargained for, there was no failure of consideration; and

3. That there being no fraud, either in representation or concealment, on the part of G. & D., the defendant had no defence to the note, although, in fact, the contract of the city with G. & D. was *ultra vires,* and was, for that reason, repudiated by the city.

On rule to show cause.

For the rule, *Leaming & Black.*

The principal question in this case is :

I. Should defendant have been allowed to prove at the trial that the contract purchased by him, for which he gave the note on which suit was brought, was void because of the incapacity of one of the parties to said contract?

It is well settled that when a bill, note, or other chose in action or contract, or obligation evidenced by writing, is sold, there is an implied warranty that the article sold is the identical article which the vendor agreed to sell and the vendee agreed to buy, and if the thing proves not to be the thing intended to be sold and purchased, there is a failure of consideration which will preclude a recovery.

This principle is nowhere questioned, and its assertion has most frequently arisen in cases where the thing sold has proven to be a forgery, and therefore not the identical instrument or chattel which was supposed to be the subject of the sale. *Gompertz* v. *Bartlett,* 23 *L. J., Q. B.,* 65 ; *S. C.,* 2 *El. & B.* 849 ; *Westropp* v. *Solomon,* 8 *C. B.* 345, 373 ; *Jones* v. *Ryde,* 5 *Taunt.* 488 ; *Young* v. *Cole,* 3 *Bing. (N. C.)* 724 ; *Benj. Sales* \*380.

*Addison on Contracts,* however, makes the distinction that, where the purchaser gets what he bargained for, although the subject matter of the sale may subsequently turn out to be a thing of no value or a void instrument, that a different rule applies (*p.* \*1183), and cites, in support of that distinction, the case of *Lambert* v. *Heath,* 15 *Mees. & W.* 488, in which case certain certificates of shares in a proposed railway were purchased and the shares subsequently proved to be worthless, on the ground that the secretary had issued them without authority.

Our contention is, that in the sale of a chattel, chose in action, contract, or other obligation evidenced in writing, the implied warranty includes the idea that the instrument was signed by persons capable of binding themselves by the contract assigned, unless there was an agreement between the

parties to the sale to the contrary; and if it subsequently appears that the instrument assigned or purchased was void because executed by parties not capable of binding themselves, there can be no recovery.

We think the true doctrine established by reason and authority is, that it is no defence that the instrument assigned or purchased turns out to be intrinsically valueless, as, for instance, a promissory note where the maker is worthless, if the note purchased was really the note bargained for; that is, an instrument containing all the legal requisites—essential elements—of a promissory note; but if the note purchased lacks any of the essential elements of a note, it is not in fact a note, but a void instrument, in form only a note, and hence not the instrument bargained for. So in this case, the contract or instrument purchased may have been between the identical parties that it purported to be, it may have been drawn in the usual form of contracts of that character, yet, if it lacked any of the necessary elements of a legal contract, it was void and not a contract at all, but a mere piece of paper—in form, legal; in law, void.

In the case of *Kempson* v. *Saunders*, 12 *Moo.* 44; *S. C.*, 4 *Bing.* (*N. C.*) 5, a company was formed for the purpose of organizing a railroad; directors were nominated and scrip issued; plaintiff purchased scrip of defendant. The scheme was abandoned before an act was procured from parliament granting a charter. Action was brought by plaintiff against defendant to recover back the money paid, on the ground of failure of consideration. Lord Chief Justice Best held: "These shares were in fact not salable nor articles of any value until the company formed and receive the sanction of the legislature. The defendant, therefore, in fact, sold mere pieces of parchment worth nothing, and obtained money from the plaintiff for a thing of no value, and it is an established rule of law, founded on an equitable principle, that where money has been paid over by one party to another, without valuable consideration, or on a consideration that fails (which rule strictly applies to this case), an action for money had and

received lies to recover it back.   The defendant, when he professed to sell his shares, had, in fact, nothing of value to dispose of; therefore, the plaintiff, who has paid his money without a consideration, is entitled to recover it back."

In the case of *Lobdell* v. *Baker*, 3 *Metc.* (*Mass.*) 469, a promissory note was placed in circulation bearing the endorsement of a minor.   It was held that the holder may recover back the money paid for failure of consideration.   Chief Justice Shaw said :   " There is a manifest difference in such case, between a minor, one not bound by a contract, and a person who, though his pecuniary responsibility is not such as adds much strength to the security, does not bind himself.   Whoever takes a negotiable security is understood to ascertain for himself the ability of the contracting parties; but he has a right to believe without inquiring, that he has the legal obligation of the contracting parties appearing on the bill or note. Unexplained, the purchaser of such a note has a right to believe, upon the faith of the security itself, that it is endorsed by one capable of binding himself by the contract which an endorsement by law imports.   It is an averment to that effect, on the part of him who procures such an endorsement and puts the note bearing it into circulation."

Lobdell *v.* Baker was approved by *Merriam* v. *Walcott*, 85 *Mass.* (3 *Allen*) 260.

In the case of *Thrall* v. *Newell*, 19 *Vt.* 208, defendant executed to plaintiff a written assignment in these words : " I hereby assign to Reuben R. Thrall a note in my favor against Theodore Woodward and John H. Phillips, dated November 13, 1838, for $150.00, payable in one year from date, with interest, for value received."   It appeared that the note assigned was invalid as to one of the signers, by reason of his insanity at the time of signing the note.   The court held that such instrument, in describing property assigned as " a note," must be construed as an express warranty on the part of the defendant that it was a valid note, and that the signers were of a sufficient capacity to contract when they executed it.   It was also further held, that even though the

assignment had not amounted to an express warranty, that the note was a valid note; yet there was in the sale an implied warranty that the thing sold was that for which it was sold— which implied warranty includes the idea that it was signed by persons capable of binding themselves by contract. The court, in its opinion, said: "If one or both of the signatures to the note disposed of by the defendant had been forgeries, there would seem to be no question but that the defendant would have been liable on an implied warranty, and the only real doubt is, whether such implied warranty extends beyond the fact of a mere forgery, and embraces a want of capacity in the party to make the contract."

In the case of *Ross* v. *Terry*, 63 *N. Y.* 613, defendant sold a bond and mortgage to plaintiff. The security proved to be usurious. There was held to be an implied warranty on the part of the vendor that it was a valid and subsisting security for the amount expressed.

In the case of *Hurd* v. *Hall*, 12 *Wis.* 113, the commissioners of school land issued certain school land certificates. Defendant sold one to plaintiff. The certificate proved to be void through want of power in the commissioners. *Held*, plaintiff could recover for failure of consideration in that there was an implied warranty of title which failed, as the certificates were not valid certificates. The court said: "The instruments assigned, though resembling school land certificates, were not such certificates at all. They were mere pieces of worthless paper drawn up in the form of such certificates. The fact that they were signed by such commissioners in their official capacity can make no difference, so long as they were wholly unauthorized to do so. Their acts in signing and issuing them, under the circumstances, were wholly void, and the certificates, in that respect, were no better than if they had been signed by some other person, and were sheer forgeries."

In *Giffert* v. *West*, 33 *Wis.* 617, a usurious note was sold by defendant to plaintiff. *Held*, "In the assignment of an instrument or contract in writing, the assignor impliedly warrants that it is valid, and that the obligator is liable upon it;

and, if the contrary appears, there is a failure of consideration." Chief Justice Dixon said: "It has sometimes been held in doubt, whether, upon the sale or assignment of a bill, note, or other chose in action or contract, or obligation evidenced by writing, the implied warranty extends beyond the genuineness of the instrument itself, or the mere fact that it was not a forgery, or whether it also embraces the capacity of the contracting parties making the contract, and their liability upon it as valid and binding in law, according to the purport of the instrument on its face, and as the same is presented by the seller to the purchaser." The court concluded that the implied warranty embraces the capacity of the contracting parties to the instrument.

In the case of *Wood* v. *Sheldon*, 13 *Vroom* 421, the defendants were stockholders in the Citizens Gas Light Company of Newark, when the board of directors of that corporation passed a resolution declaring a scrip dividend of ten per cent. on the amount of capital stock, and, in pursuance thereof, issued to the defendants certain scrip dividends, which, through the medium of a broker, was purchased of them by the plaintiff. It was subsequently determined that such scrip dividends were illegally issued, and the plaintiff brought suit to recover the money paid by him in this transaction.

The defence set up was, that there was no warranty annexed to the sale, and that the plaintiff got the certificate of indebtedness, which was the thing he bargained for.

Chief Justice Beasley, in delivering the opinion of the court, said: "The position of the defence rests plainly, I think, on a false basis. The plaintiff did not bargain for the certificate, but for the money of which the certificate purported to be the evidence of title. It serves to simplify the point to keep in mind the circumstance that this certificate is not a negotiable instrument, but that the rule of law pertinent to this matter is the rule that applies in the sale of an ordinary uncommercial chose in action. The legal regulations which pertain to a sale of such an interest do not differ

from those that attend the sale of a chattel. If a person sells
a bond in the absence of a special bargain, the legal incidents
of the transaction are the same as if the article sold had been
a horse. In both instances, under ordinary circumstances,
there is an implied warranty of title in the thing sold by the
vendor. * * * Applying this principle in the present
instance, it is clear that, under the conditions of the sale, the
defendants, by the mere act of selling, impliedly held out that
the title to this money was in them, and the certificate itself
contained that averment. * * * In point of fact, there
was no debt or money due, or corporate liability of any kind.
There was nothing to sell, and, consequently, the defendants
had no title to that which they undertook to sell. The ill
founded belief of the defendants, that they were possessed of
a good title, is an ingredient of the case of no value, for the
ground of the recovery is not deceit, but warranty. * * *
The precedents cited, which maintain the principle that where
a person gets what he intended to purchase he cannot repudi-
ate the bargain, no matter how worthless the thing so ob-
tained may be, certainly can have no application to this case,
in which the vendee did not get what he expected to get.
Both parties to the present contract thought that he was ob-
taining a valid obligation of this gas company, binding them
to pay this large sum of money. Instead of this, a nullity
was passed to him."

Wood *v.* Sheldon cites and approves Thrall *v.* Newell,
above cited.

II. We contend further, that the court erred in refusing to
allow the jury to pass upon the question of whether or not
there was an express warranty of the validity of the contract
assigned.

The defendant testified as follows: " They (meaning
plaintiff) came there and said they had entered into a contract
with Holly Beach City to build a certain breakwater; that
they had got ready to commence, but Holly Beach City could
not furnish money, or could not raise the money, to meet the
terms of the contract, but with the exception of that it was a

good contract; and that they had calculated it up and had experts to do it, and that there was $3,000 profit in it; and that they could not carry the contract through themselves, but if we could take bonds and build the breakwater, that we could take the contract, go through with it, and they would assign us or sell to me their contract."

The court held that these words of witness were not words expressing any assertion as to the validity of the contract, but that the witness, in using the term "good contract," meant thereby one which was favorable.

We contend that the language used by the witness did import an expression of opinion amounting to a warranty as to the validity of the contract, and that the jury should have been allowed to pass upon that question.

III. We claim further, that the failure of plaintiff to deliver the contract to defendant, precludes his recovery.

The effect of non-delivery of a chattel, or chattel interest, conveyed, is asserted most frequently in cases where the rights of third parties are involved ; but as between the parties, we hold that a mere agreement to assign a written instrument in the nature of an assignment delivered, without any delivery of the writing evidencing the debt or obligation, but that writing remaining in the hands of the assignor, does not constitute a complete assignment, excepting, perhaps, in cases where the instrument assigned is of record, and the assignment can be effected by a similar record of the same. 1 *Pars. Cont.* 229 ; *Palmer* v. *Merrill*, 6 *Cush.* 286.

In the present case, the plaintiff has not placed the defendant in a position where he could effectually enforce the contract against the borough, for the reason that the original contract, if, indeed, it ever actually existed, has not been delivered to him.

*Contra, D. J. Pancoast.*

The defendant was not misled by the plaintiff into making the contract of sale under which the note in question was

given. The defendant wanted to get from the city the contract to build the sea wall, and in order to do so he bought the plaintiff's right to a prior contract.

The contract of sale fairly expresses the understanding between the parties, which was simply that the plaintiff should transfer to the defendant "all their right, title and interest in a certain contract entered into by the authorities of Holly Beach City to build a certain breakwater ordered built by a resolution passed April 14th, 1887."

Where the vendor assigns in writing only all his "right, title and interest" in the thing sold, there is no warranty of any kind as to title or anything else. *Bid. War. Chat.* (1884), §§ 249, 257, 259; *Allen* v. *Holton,* 20 *Pick.* 458, 459, 464; *Jones* v. *Huggiford,* 3 *Metc.* 515, 519; *Bank of N.* v. *Mass. Loan, &c.,* 123 *Mass.* 330; *Hoxie* v. *Finney,* 16 *Gray* 332; *Krumbarr* v. *Birch,* 83 *Penna. St.* 426.

It has been held that the sale of a void parol agreement to convey land furnished a good consideration for a contract to pay £40 for an assignment of the same, *per* C. J., in *Leaman* v. *Price,* 2 *Bing.* 437.

That the assignment of an invalid patent right, in the absence of fraud, false representation or warranty, furnished a good consideration for a promise to pay for it. *Hall* v. *Conder,* 26 *L. J., C. P.,* 138. In giving judgment in this case the court said: "The purchaser had the same means of knowledge as the vendor. Why, then, should we assume that the plaintiff meant to assert that the patent was indefeasible, and that the defendant purchased it with that understanding, rather than that each knowing what the invention was, and having the equal means of knowing what the invention was, and its value, they contracted for it such as it was, each acting on his own judgment."

That a sale of genuine school orders did not imply a warranty that the officers who issued them had legal authority so to do. *White* v. *Robinson,* 50 *Mich.* 73.

The court in this case said: "A sale of genuine documents may involve a warranty of title, but we do not think it in-

volves any warranty that the officers had lawful authority to act in the given case. These papers were valid on their face, as is admitted, and we think, in the absence of representations or fraud, plaintiff took them for what they were worth."

That the purchaser of a note void for usury, but without any knowledge or representations as to its infirmity on the part of the vendor, was not entitled to have the price refunded. *Littaner* v. *Coldman,* 72 *N. Y.* 506.

That an agreement to relinquish a void contract with a municipality is a valid consideration to support a promise to pay for it. *Wile* v. *Wilson,* 93 *N. Y.* 255.

The court in this case said : " The release by the plaintiff to the defendant removed an obstruction in the defendant's path, and because he can now say, in the light of subsequent adjudication, that the plaintiff's contract was invalid, it does not prevent the plaintiff's act, performed at his request, from operating as a consideration for the contract in question."

That if a purchaser gets what he knowingly contracts for, he cannot repudiate the transaction on the ground of the failure of consideration because it turned out to be worthless. *Neidefer* v. *Chastian,* 71 *Ind.* 363.

The court in this case said : " If the facts show that a party got what he contracted for, that he voluntarily and with knowledge of a thing for which he bargained deliberately contracted, he cannot escape liability upon the allegation and proof that what he got was worthless."

That the transfer of a plan for the organization of an insurance company, though there was no law authorizing the formation of such a company, was a good consideration for a promise to pay for the transfer. *Coates* v. *Bales,* 78 *Ind.* 285.

That an agreement to pay money in settlement of an utterly groundless suit is valid. *Clark* v. *Turnbull,* 18 *Vroom* 265.

That a doubtful right or claim against a municipality is a good consideration for a promise to pay for its surrender or release. *Costar* v. *Brush,* 25 *Wend.* 628.

That the sale of a license to keep an inn or tavern, though it could not be used by the purchaser, and was of no value to

him, was binding, and the vendor could recover the price, inasmuch as the vendee got what he bargained for, and was in no wise imposed upon. *Hoagland* v. *Hall*, 9 *Vroom* 350.

It is insisted that the defendant got all he bargained for, and that, according to the foregoing authorities, the plaintiff is entitled to that part of the consideration represented by the note in question.

Argued at February Term, 1889, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

The opinion of the court was delivered by

DEPUE, J. This suit was upon a promissory note made by the defendant. The defence was the want or failure of consideration.

The city council of Holly Beach City proposed to build a breakwater. The defendant was an applicant for a contract to do the work, and prepared and sent to the city council an agreement with the city to that effect. Members of the city council sent word to the defendant that the city had already entered into a contract for the building of the breakwater with Gould & Downs; that these parties could not fulfill their contract, and that, if the defendant would make a satisfactory arrangement with Gould & Downs, the city would give him the contract. The parties thereupon entered into negotiation, the conclusion of which was a contract, in writing and under seal, whereby Gould & Downs, for the consideration of a note for $375, and $500 in city bonds, assigned to the defendant "all our right, title and interest in a certain contract entered into by the authorities of Holly Beach City and ourselves to build a certain breakwater ordered built by a resolution passed April 14th, 1887." Subsequently the city council, having obtained the opinion of counsel that the city had no power to build the breakwater, refused to ratify the arrangement of the defendant with Gould & Downs, and abandoned the project of constructing the work.

The note sued on was given in compliance with the terms of this assignment. There was no proof of an express warranty by Gould & Downs of the validity of their contract, nor any evidence from which fraud, either in representation or concealment, on their part, could be inferred. The power of the city to make the contract was not mooted until after these parties had concluded their arrangement and the assignment had been made, and if the contract was invalid its invalidity arose from the city charter, a public act equally within the knowledge of both parties.

The defendant's contention was that, inasmuch as there was a sale of the contract, a warranty that the contract was a valid contract was implied, and that the contract, being *ultra vires* on the part of the city and void, the consideration entirely failed. If the proposition on which the defence was rested be sound in law, the defence was appropriate in this suit. The doctrine of implied warranty of title in the sale of goods applies as well to the sale of a chose in action, and extends, not merely to the paper on which the chose in action is written, but embraces also the validity of the right purported to be transferred. *Wood* v. *Sheldon,* 13 *Vroom* 421. Nor is there anything in the nature of the alleged infirmity of the contract that would bar the defence. In the ordinary case of a suit on a breach of a warranty of title, the validity of the vendor's title against the adverse claimant is triable if the purchaser has in fact lost title, although the transactions which determine the vendor's title are *res inter alios acta.* If the contract, which was the subject matter of the assignment, was in fact *ultra vires,* a foundation was laid for this defence, the city having repudiated the contract *in limine* on that ground.

The validity of the defence offered and overruled depends upon the fundamental proposition, whether, under the circumstances of this sale, a warranty of title is implied in law. The theory on which a warranty of title is implied upon the sale of personal property is, that the act of selling is an affirmation of title. The earlier English cases, of which

*Medina* v. *Stoughton,* 1 *Salk.* 210, 1 *Ld. Raym.* 593, is a type, adopted a distinction between a sale by a vendor who was in possession and a sale where the chattel was in the possession of a third person—annexing a warranty of title to the former, and excluding it in the latter. In the celebrated case of *Paisley* v. *Freeman,* 3 *T. R.* 51, Buller, J., repudiated this distinction. Speaking of Medina *v.* Stoughton, this learned judge said, that the distinction did not appear in the report of the case by Lord Raymond, and he adds : " If an affirmation at the time of the sale be a warranty, I cannot feel a distinction between the vendor's being in or out of possession. The thing is bought of him, and in consequence of his assertion, and if there be any difference, it seems to me that the case is strongest against the vendor when he is out of possession, because then the vendee has nothing but the warranty to rely on." Nevertheless, the English courts continued to recognize the distinction with its incidents as adopted in Medina *v.* Stoughton to some extent, at least so far as to annex the incident of an implied warranty of title on a sale by a vendor in possession. Later decisions have placed the whole subject of implied warranty of title on a more reasonable basis. Mr. Benjamin, in his treatise on Sales, after a full examination and discussion of the late English cases, states the rule in force in England at this time in the following terms : "A sale of personal chattels implies an affirmation by the vendor that the chattel is his, and therefore he warrants the title, unless it be shown by the facts and circumstances of the sale that the vendor did not intend to assert ownership, but only to transfer such interest as he might have in the chattel sold." 2 *Benj. Sales (Corbin's ed.),* §§ 945–961. In this country the distinction between sales where the vendor is in possession, and where he is out of possession, with respect to implied warranty of title, has been generally recognized, but the tendency of later decisions is against the recognition of such a distinction, and favorable to the modern English rule. 2 *Benj. Sales (Corbin's ed.),* § 962, *note* 21 ; *Bid. War.,* §§ 246, 247. The American editor of the ninth edition of

*Smith's Leading Cases,* in the note to Chandelor *v.* Lopus, after citing the cases in this country which have held that the rule of *caveat emptor* applies to sales where the vendor is out of possession, remarks that, in most of them, what was said on that point was *obiter dicta,* and observes " that there seems no reason why, in every case where the vendor purports to sell an absolute and perfect title, he should not be held to warrant it." 1 *Sm. Lead. Cas.* (*Edson's ed.*) 344.

In *Wood* v. *Sheldon, supra,* Chief Justice Beasley, in delivering the opinion of the court, adopted, in terms, the rule stated by Mr. Benjamin, and made it the foundation of decision. The precise question now under discussion did not then arise. In *Eichholz* v. *Bannister,* 17 *C. B., N. S.,* 708, 721, Erle, C. J., said : " I consider it to be clear upon the ancient authorities that if the vendor of a chattel, by word or conduct, gives the purchaser to understand that he is the owner, that tacit representation forms part of the contract, and that if he is not the owner his contract is broken. * * * In almost all the transactions of sale in common life, the seller, by the very act of selling, holds out to the buyer that he is the owner of the article he offers for sale." It that case it was held, that on the sale of goods in an open shop or warehouse, in the ordinary course of business, a warranty of title was implied. But there is a line of English cases holding that where the facts and circumstances show that the purpose of the sale, as it must have been understood by the parties at the time, was not to convey an absolute and indefeasible title, but only to transfer the title or interest of the vendor, no warranty of title will be implied. In this proposition, the fact that the vendor is in or out of possession is only a circumstance of more or less weight, according to the nature and circumstances of the particular transaction. Thus, in *Morley* v. *Attenborough,* 3 *Exch.* 500, the holding was, that, on a sale by a pawnbroker at public auction, of goods pledged to him in the way of business, there was no implied warranty of absolute title, the undertaking of the vendor being only that the subject of the sale was a pledge, and irredeemable by the pledgor.

In *Chapman* v. *Speller*, 14 *Q. B.* 621, the defendant bought goods at a sheriff's sale for £18. The plaintiff, who was present at the sheriff's sale, bought of the defendant his bargain for £23. The plaintiff was afterwards forced to give up the goods to the real owner. He then sued the defendant, alleging a warranty of title. The court held that there was no implied warranty of title nor failure of consideration; that the plaintiff paid the defendant, not for the goods, but for the right, title and interest the latter had acquired by his purchase, and that this consideration had not failed. In *Bagueley* v. *Hawley*, *L. R.*, 2 *C. P.* 625, a like decision was made, where the defendant resold to the plaintiff a boiler the former had bought at a sale under a distress for poor rates, the plaintiff having knowledge at the time of his purchase that the defendant had bought it at such sale. In *Hall* v. *Condon*, 2 *C. B.*, *N. S.*, 21, the plaintiff, by an agreement in writing, by which, after reciting that he had invented a method of preventing boiler explosions, and had obtained a patent therefor within the United Kingdom, transferred to the defendant " the one-half of the English patent," for a consideration to be paid. In a suit to recover the consideration the defendant pleaded that the invention was wholly worthless, and of no public utility or advantage whatever, and that the plaintiff was not the true and first inventor thereof. On demurrer the plea was held bad, for that, in the absence of any allegation of fraud, it must be assumed that the plaintiff was an inventor, and there was no warranty, express or implied, either that he was the true and first inventor within the statute of James, or that the invention was useful or new; but that the contract was for the sale of the patent, such as it was, each party having equal means of ascertaining its value, and each acting on his own judgment. A like decision was made in *Smith* v. *Neale*, 2 *C. B.*, *N. S.*, 67.

Chief Justice Erle, in his opinion in Eichholz *v.* Bannister, describes Morley *v.* Attenborough, Chapman *v.* Speller, and Hall *v.* Condon, as belonging to the class of cases where the conduct of the seller expresses, at the time of the contract, that

he merely contracts to sell such title as he himself has in the thing. The opinion is valuable in that, while it rescues the common law rule of implied warranty of title from the assaults of distinguished judges who held that *caveat emptor* applied to sales in all cases, and that in the absence of express warranty or fraud the purchaser was remediless—it also placed the rule under the just limitation that it should not apply where the circumstances showed that the sale purported to be only a transfer of the vendor's title. Expressions, such as " if a man sells goods *as his own,* and the title is deficient, he is liable to make good the loss " (2 *Bl. Com.* 451), or, " if he sells *as his own, and not as the agent of another, and for a fair price,* he is understood to warrant the title " (2 *Kent* 478), as statements of the principle on which the doctrine of implied warranty of title rests are not inconsistent with the principle adopted by Chief Justice Erle. Stating the principle in the negative form, adopted in Morley *v.* Attenborough, that there is no undertaking by the vendor for title unless there be an *express warranty of title, or an equivalent to it by declaration or conduct,* affects only the order of proof. It was conceded in that case that the pawnbroker selling his goods undertook that they had been pledged and were irredeemable by the pledgor, and, if it be assumed, as I think it must be, that the act of selling amounts to an affirmation of title of some sort, but that its force and effect may be explained, qualified or entirely overcome by the facts and circumstances connected with the transaction, the difference between Morley *v.* Attenborough and Eichholz *v.* Bannister will rarely be of any practical importance.

The limitation above mentioned upon the doctrine, that the act of selling is an affirmation of title, has been adopted in this state. In *Bogert* v. *Chrystie,* 4 *Zab.* 57, 60, this court held that the general rule, that the vendor of goods, having possession and selling them as his own, is bound in law to warrant the title to the vendee, did not apply where the vendor sells with notice of an outstanding interest in a third party, and subject to that interest. In *Hoagland* v. *Hall,* 9

*Vroom* 351, the vendor agreed, in writing, to assign a lease he held upon certain premises, and to sell and transfer goods and chattels mentioned in a schedule. The premises were a licensed inn and tavern, and in the schedule of the articles sold were enumerated " the licenses of the house." The law under which the license was granted prohibited the transfer of a license, and in the purchaser's hand it would be void and valueless. The court held that that circumstance did not justify the purchaser in withdrawing from his contract; that there was no warranty by the vendor that the license, when assigned, would be of any value to the purchaser, and that the latter, having obtained by the assignment what he had bargained for, could not annul his contract, unless he showed fraud or misrepresentation with respect to the subject matter of the contract.

In *National Bank of Northampton* v. *Massachusetts Loan and Trust Co.*, 123 *Mass.* 330, the defendant had a contract with B., pledging to him certain tobacco, in which it was recited that the tobacco was B.'s own property, and free from all encumbrances, and made an assignment to the plaintiff " of all his right, title and interest in and under the contract, with all the property therein mentioned." The tobacco was then in the defendant's possession, and was delivered by him to the plaintiff. Afterwards a third person demanded and recovered of the plaintiff part of the tobacco as his property, which had been pledged to the defendant without right. The plaintiff then sued the defendant on an alleged implied warranty of title. The court ruled adversely to the plaintiff's claim. In the opinion the court said, that the written assignment did not purport to be a sale of the goods, but of all the defendant's right under the contract, and its obvious purpose was to substitute the plaintiff in the place of the original pledgee, and that the fact that at the time of the transfer to the plaintiff the goods were in the actual possession of the defendant did not vary the case.

In the case in hand, the circumstances connected with the assignment, independent of the words " all our right, title and

interest," &c., contained in it, preclude the implication of a warranty of the validity of the contract. Taken in connection with the words of the assignment, the intention of the parties is free from doubt.

The contention that the plaintiff was in fault, in that he made no delivery of the contract to the defendant, is without substance. The contract was neither produced at the negotiation between the parties, nor was it required. The transaction was the purchase of Gould & Downs' interest to consummate an arrangement whereby those parties were to be got rid of, that the city might give the defendant a contract. The defendant obtained by the assignment all he bargained for.

The defence was properly overruled, and the rule to show cause should be discharged.