The INDIANA NATIONAL BANK, a National Banking Association, Appellant,

v.

STATE of Oklahoma DEPARTMENT OF HUMAN SERVICES; Robert Fulton, Director, State of Oklahoma, Department of Human Services; Office of State Finance, State of Oklahoma; Victor Thompson, Director of State Finance, State of Oklahoma; Office of Public Affairs, State of Oklahoma; Delmas Ford, Director, Office of Public Affairs, State of Oklahoma and Oklahoma Development Authority, Defendants,

and

Prudential–Bache Securities, Inc., Appellee.

No. 74771.

Supreme Court of Oklahoma.

July 19, 1994.

As Corrected Aug. 18, 1994.

Rehearing Denied Sept. 22, 1994.

C.S. Lewis, III, William C. Connor, Marilyn M. Wagner, Marc F. Conley, Robinson, Lewis, Orbison, Smith & Coyle, Tulsa, for appellant.

Roy J. Davis, Douglas C. McBee, Anne M. Moore, Paul E. Hamilton, Murrah & Davis, Heather L. Hintz, Phillips McFall McCaffrey McVay & Murrah, Oklahoma City, for appellee.

LAVENDER, Vice Chief Justice.

■ We decide whether the trial court correctly granted the motion to dismiss of appellee, Prudential–Bache Securities, Inc. (Prudential–Bache) for failure of appellant, Indiana National Bank (INB) to state a claim upon which relief could be granted made pursuant to 12 O.S.1991, § 2012(B)(6). We hold the trial court erred because, at a minimum, INB stated claims under the theories of implied warranty and federal securities violation.[1]

---

1. On appeal INB also claims it stated claims against Prudential–Bache for breach of express

## STANDARD FOR REVIEWING
## MOTION TO DISMISS

■ Our review of a trial court's dismissal for failure to state a claim upon which relief can be granted involves a *de novo* consideration on our part as to whether the petition is legally sufficient. *Gay v. Akin*, 766 P.2d 985, 989 n. 13 (Okla.1988). In reviewing a motion brought pursuant to § 2012(B)(6) we, of course, initially look to the petition, but the petition should also be construed in connection with exhibits attached to it and it is proper to consider such exhibits when ruling on a § 2012(B)(6) motion. *Great Plains Federal S & L v. Dabney*, 846 P.2d 1088, 1090 n. 3 (Okla.1993). In our review, we must keep in mind, "[a] pleading … shall contain … [a] short and plain statement of the claim showing that the pleader is entitled to relief; and … [a] demand for judgment for the relief to which he deems himself entitled." 12 O.S.1991, § 2008(A)(1)(2). This requirement is not onerous, but is merely to give an opposing party fair notice of the claim and the grounds upon which it rests. *Gunn v. Consolidated Rural Water & Sewer District, No. 1, Jefferson County, Oklahoma*, 839 P.2d 1345, 1351 (Okla.1992). Further, a petition may set forth a claim alternatively or hypothetically [§ 2008(E)(2) ] and the Oklahoma Pleading Code [12 O.S.1991, §§ 2001–2027, as amended] permits the assertion of inconsistent facts or theories in recognition that inconsistency in pleadings does not necessarily mean dishonesty, but that frequently, in good faith, a pleader must assert contradictory statements where he is legitimately in doubt about the factual background of his case or the legal basis for his recovery. *Howell v. James*, 818 P.2d 444, 447 (Okla.1991).

■ When reviewing a motion to dismiss, the court must take as true all of the challenged pleading's allegations together with all reasonable inferences which may be drawn from them. *Great Plains*, 846 P.2d at 1090 n. 3. "A pleading *must not* be dismissed for failure to state a legally cognizable claim *unless* the allegations indicate *beyond any doubt* that the litigant can prove *no* set of facts which would entitle him to relief." *Frazier v. Bryan Memorial Hosp. Auth.*, 775 P.2d 281, 287 (Okla.1989) (emphasis in original). Further, the burden to show the legal insufficiency of the petition is on the party moving for dismissal and a motion made under § 2012(B)(6) must separately state each omission or defect in the petition; if it does not, the motion shall be denied without a hearing. *See Curlee v. Norman*, 774 P.2d 481, 482 (Okla.Ct.App.Div. 1, 1989).

■ Motions to dismiss are generally viewed with disfavor under this liberal standard [*Kentucky Central Life Insurance Company v. LeDuc*, 814 F.Supp. 832, 835 (N.D.Cal.1992) ] and to withstand a motion to dismiss it is not necessary for a plaintiff to either identify a specific theory of recovery or set out the correct remedy or relief to which he/she may be entitled. *Great Plains*, 846 P.2d at 1096 (Opala, J., concurring opinion); *Illinois Constructors Corporation v. Morency & Associates, Inc.*, 802 F.Supp. 185, 187 (N.D.Ill.E.D.1992). Generally, a petition may be dismissed as a matter of law for two reasons: (1) lack of any cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Kentucky Central Life Insurance Company v. LeDuc, supra*, 814 F.Supp. at 835. When a trial court is considering his ruling on a § 2012(B)(6) motion he should **not** ask whether the petition points to

warranty, rescission based on partial failure of consideration or constructive fraud and material misrepresentation, negligent misrepresentation, and apparently for negligent breach of contract. INB did not argue in any of its briefs to the trial court any claim concerning express warranty nor did it ever mention in any trial court brief a claim based on partial failure of consideration. INB further never made a claim based on negligent breach of contract as far as we can determine from the trial court record. Because it made no such claims in the trial proceedings leading to dismissal we decline to reach such

arguments here. *Great Plains Federal S & L v. Dabney*, 846 P.2d 1088, 1089 n. 3 (Okla.1993); *Jones v. Alpine Investments, Inc.* 764 P.2d 513, 515 (Okla.1987). Also, in that we hold INB stated claims for breach of implied warranty and federal securities violation we find it unnecessary to determine whether claims were also stated for rescission based on constructive fraud or material misrepresentation, or for negligent misrepresentation. Whether such claims, or any other(s), would be viable in this matter will have to await further developments in the trial court.

an appropriate statute or legal theory, but whether relief is possible under any set of facts that could be established consistent with the allegations. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). As said in *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), a leading case espousing the purpose of the Federal Rules of Civil Procedure, upon which our Oklahoma Pleading Code was patterned, "[t]he ... Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The above standards guide our review in this case.

## FACTS AND PROCEDURAL HISTORY

The instant matter is a related appeal to *Indiana National Bank v. Department of Human Services,* 857 P.2d 53 (Okla.1993). Part of the factual underpinnings of this case will therefore be taken from *Indiana National Bank* as indicated.

The Oklahoma Office of Public Affairs (OPA), at the request of the Oklahoma Department of Human Services (DHS), sought bids for the lease/purchase of computer equipment to be used by DHS. *Indiana National Bank,* 857 P.2d at 57. OPA issued a Notice of Award of Contract to Public Leasing Corporation (PLC), which provided a sixty (60) month lease term, but which was subject to annual approval of renewals by the State and continued fiscal year legislative appropriations. *Id.* at 57–58. Shortly after OPA awarded the contract, PLC added a nonsubstitution clause which was not part of the bid accepted by OPA and, consequently,

not part of the original contract awarded by OPA. *Id.* at 63. The clause prevented DHS from terminating the contract for the purpose of acquiring other computer equipment that performed essentially the same functions as the leased equipment. DHS executed only this modified Agreement (hereafter Agreement).

In addition to executing the modified Agreement, DHS executed an Addendum thereto and issued an opinion from its legal counsel as to the validity and enforceability of the Agreement, i.e. DHS stated the Agreement as executed was valid and enforceable without authorization from any other government entity. PLC then sold the Agreement to Prudential–Bache. Prudential–Bache marketed the Agreement via a Prospectus as a tax-exempt lease/purchase transaction worth approximately $2,687,509.23. The Prospectus contained a summary of proposed terms and included a copy of the Agreement signed by DHS, an essential use letter from DHS, the Addendum signed by DHS stating it intended to continue the lease for the full term, a second Addendum, the legal opinion of DHS, and the Notice of Award of Contract from OPA.

Prudential–Bache sold INB an assignment of the Agreement (i.e. the modified one) it had purchased from PLC. DHS made payments to INB for about two years, but then informed INB it was not renewing the contract for the next fiscal year. INB sued DHS for breach of contract and, alternatively, Prudential–Bache for breach of implied warranty, violation of the Securities Act of 1933, 15 U.S.C. § 77a et seq. and negligent misrepresentation. It requested both damages and rescission of the assignment.[2]

---

**2.** INB brought its claims against DHS via a First Amended Petition and against Prudential–Bache by an Amendment to First Amended Petition, which incorporated by reference the former pleading. We refer to these two documents as the petition. Also, the Agreement, the first addendum, the opinion letter of DHS counsel and the assignment from Prudential–Bache to INB were attached to the petition. The Prospectus was not so attached, but was specifically referenced therein. We held in *Hulsey v. Mid-America Preferred Ins. Co.,* 777 P.2d 932, 935 (Okla. 1989), that an insurance policy would be treated as part of plaintiff's petition even though a copy was not physically appended to the petition, but

to a motion we treated as one to dismiss for failure to state a claim upon which relief could be granted, when the policy was specifically identified in the petition. Attaching a copy of the insurance policy to the motion, rather than the petition, did not require treating the matter as one for summary judgment when the motion being considered only challenged the petition's legal sufficiency. *Id.* at 935–936. Likewise, in this case, INB specifically identified the Prospectus in its petition as the instrument Prudential–Bache used to induce INB to purchase the assignment and a copy of the Prospectus was appended to INB's brief opposing Prudential–

In *Indiana National Bank* DHS partially defended on the breach of contract claim by asserting it was without authority to agree to the nonsubstitution clause, without OPA approval and OPA had not approved the modification. In *Indiana National Bank* we upheld a trial court grant of summary judgment in favor of DHS partly based on the determination the reviewable record contained no evidence the modified Agreement, with its nonsubstitution clause, was approved or authorized by OPA. *Indiana National Bank*, 857 P.2d at 63–64. We also held DHS lacked authority to agree to the nonsubstitution clause, which we determined to be a material modification, without OPA approval, that DHS had acted beyond its authority in doing so and it was not estopped to deny the validity of the modified Agreement. *Id.* at 60–65.

In its petition INB attempted to state three theories of recovery against Prudential–Bache. In essence, they were in the alternative and based on the assumption DHS might prevail on the breach of contract claim brought against DHS by INB. In this opinion we will deal only with the claims concerning implied warranty and federal security violation brought by INB against Prudential–Bache.[3]

INB first claimed the Agreement was assigned for good and valuable consideration, that by assigning the Agreement Prudential–Bache impliedly warranted the Agreement was what it purported to be, i.e. a valid and binding contract enforceable according to its terms against DHS. INB asserted if the Agreement containing the nonsubstitution clause was **not** valid and enforceable because not approved by OPA Prudential–Bache breached the implied warranty and was liable to INB for damages.

INB also alleged the Agreement was a security within the meaning of the Securities Act of 1933, that the assignment was sold by means of transportation or communication in interstate commerce and through the mails by use of the Prospectus provided by Prudential–Bache. INB alleged the Prospectus specifically referenced the nonsubstitution clause. It also asserted that if the Agreement was not the same lease as approved by OPA that the Prospectus contained untrue statements of material fact or omitted to state material facts necessary in order to make the statements in the Prospectus not misleading. It essentially asserted the Prospectus contained statements which when fairly construed represented the lease assigned was approved by the State of Oklahoma (i.e. by all necessary State entities) and was valid, enforceable and binding. INB asked for rescission of the Agreement and damages.

In essence, these theories are based on the assertion INB purchased the Agreement in reliance upon the nonsubstitution clause being valid and enforceable and that all State entities (i.e. OPA) that had to approve or authorize the transaction had given valid approval or authorization. Further, although possibly not expressly stated in the petition, a reasonable inference flowing from the allegations contained therein, was that INB not only relied on the legal opinion of DHS in purchasing the assignment, but it also relied on the Prospectus, which was itself couched in such a way to vouch for the fact the Agreement was valid and enforceable according to its terms, and that all necessary State entities had given approval to the transaction.

In granting the motion to dismiss, the trial court apparently found against the implied warranty claim because he determined INB relied only on DHS representations or, any implied warranty was somehow disclaimed and no security was involved. We believe the trial court was wrong in making such a ruling at this initial stage of the litigation as we will detail below.

Bache's motion to dismiss. All parties appear to agree we may consider the Prospectus as part of INB's petition against Prudential–Bache and that we are reviewing the grant of a motion to dismiss which only challenged the petition's legal sufficiency. We, thus, treat the Prospectus, along with the other documents attached to the petition, as part of INB's petition for purposes of reviewing the propriety of the trial court's granting Prudential–Bache's motion to dismiss.

3. See note 1, *supra*.

## IMPLIED WARRANTY

INB claims that by assigning the Agreement, Prudential–Bache impliedly warranted the Agreement was what it purported to be, i.e., a genuine, valid and binding contract enforceable according to its terms, and by selling an invalid Agreement Prudential–Bache breached the warranty. Prudential–Bache contends any implied warranty was disclaimed by certain language contained in the assignment and that the face of the petition (with attached documents) shows that any certainty with regard to the validity and enforceability of the Agreement came from its repeating representations made by DHS, i.e. that by repeating representations made by DHS this somehow also evidenced a disclaimer. Prudential–Bache's arguments at this stage of the litigation are without merit.

We first note, the trial court erred when he apparently made a determination INB solely relied on the representations of DHS. Clearly, the trial court in so ruling was improperly making a factual determination in the context of a § 2012(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Further, although in its petition INB did claim it relied on the legal opinion of DHS counsel in purchasing the assignment in its claims made against DHS, and that part of its petition **might** be seen as inconsistent with any claim it also relied on the representations of Prudential–Bache contained in the Prospectus, it must be remembered INB's claims against Prudential–Bache were essentially plead as alternative theories, the claims against Prudential–Bache based on the assumption DHS might be exonerated from liability to INB. Even assuming there is inconsistency in claims that reliance was placed on representations of both DHS and Prudential–Bache, such inconsistency provides no basis for dismissal under § 2012(B)(6). We reiterate, a party is entitled to plead alternative theories

or to rely on inconsistent facts or theories under the Oklahoma Pleading Code [*Howell v. James, supra,* 818 P.2d at 447] and the fact a pleader does so is insufficient to provide a basis for dismissal under § 2012(B)(6).[4] We next turn to Prudential–Bache's assertion any implied warranty of genuineness and validity was somehow disclaimed.

The RESTATEMENT (SECOND) OF CONTRACTS § 333 (1981) under the title Warranties of Assignor provides in pertinent part:

(1) Unless a contrary intention is manifested, one who assigns or purports to assign a right by assignment under seal or for value warrants to the assignee

\* \* \* \* \* \*

(b) that the right, as assigned, actually exists and is subject to no limitations or defenses good against the assignor other than those stated or apparent at the time of the assignment;

(c) that any writing evidencing the right which is delivered to the assignee or exhibited to him to induce him to accept the assignment is genuine and what it purports to be.

(2) An assignment does not itself operate as a warranty that the obligor is solvent or that he will perform his obligation.

In *Logan County Bank v. Farmers' Nat'l Bank of Oklahoma City,* 55 Okla. 592, 155 P. 561 (1916), we held that where a vendor sells to a vendee State warrants purporting to be drawn upon a special fund there is an implied warranty the warrants so sold are what they purport to be, i.e. valid, existing obligations of the State. *Id.* at 563. Thus, as early as 1916 we have applied the rule set forth in § 333 of the Restatement (Second) of Contracts that the assignment of a chose in action[5] is generally accompanied by an im-

---

4. We caution, however, that allowance of alternative or inconsistent facts or theories does not give license to attorneys to violate the strictures of 12 O.S.1991, § 2011. Section 2011 mandates that the signature of an attorney on a pleading constitutes a certificate by him that to the best of his knowledge, information and belief formed after reasonable inquiry the pleading is well grounded in fact and is warranted by existing

law or a good faith argument for the extension, modification, or reversal of existing law. Failure to follow the strictures of § 2011 may result in sanctions in an appropriate case.

5. BLACK'S LAW DICTIONARY 241 (6th ed. 1990) defines a chose in action in pertinent part as, "[a] thing in action; a right of bringing an

plied warranty of genuineness and validity. *Logan County Bank* refers to such a warranty as one of identity. 155 P. at 562.

*Logan County Bank* makes clear the implied warranty of validity and genuineness is something more than merely an implied warranty the chose in action sold belongs to or is owned by the seller, i.e. a warranty of title. *Id.* The implied warranty dealt with in *Logan County Bank,* although related to the implied warranty of title, extends farther and protects the assignee when what is assigned turns out to be an invalid right or not what it purports to be, even though the assignor may actually be the owner of the invalid right, i.e. he actually holds title to it.[6]

■ Prudential–Bache claims it disclaimed any such implied warranty essentially relying on language contained in numbered paragraph 1 of the assignment:

[Prudential–Bache] hereby sells, assigns and delivers to [INB] **all right, title and interest of [Prudential–Bache]** in and to that certain State Government Lease/Purchase Agreement for Data Processing Equipment dated January 30, 1984, as amended by Addendum No. 1 dated February 22, 1984 (the "Agreement") between [Prudential–Bache], as Assignee of [PLC], as lessor, and [DHS], as lessee ... and all rights of [Prudential–Bache] to receive any and all monthly payments of principal and interest payable pursuant to the Agreement ... and any and all amounts relating to options to purchase. So long as [Prudential–Bache] is not in breach of any covenant or agreement under this Agreement,

INB shall have **no recourse** against Prudential–Bache. (emphasis added)

Prudential–Bache points to the emphasized language to support the disclaimer argument. The language is insufficient at the pleading stage to show the warranty was disclaimed. We deal with the "no recourse" language first.

WILLISTON ON CONTRACTS § 445, at 320–321 (3d ed. 1960) has this to say about the term "without recourse" in an assignment:

Undoubtedly an assignor may by express agreement limit the warranties which would otherwise be implied. How far this is done by the words "without recourse" has occasioned some dispute. It has been held that this throws the risk, even of forgery of the obligation, upon the assignee; but the more reasonable interpretation of these words is that the chose in action assigned is what it purports to be, namely, a valid and genuine obligation of the parties, and that it is based on consideration; and that the assignor is only seeking to make certain what the law would indeed, in any event, imply from a mere assignment, that he is not responsible for the solvency of the debtor; for an assignor, unlike the indorser of negotiable paper, warrants only that the assigned claim is legally valid. He does not guarantee the debtor's solvency, or that he will fulfill his obligations. (citations omitted)

An early case concerning the term "without recourse" states:

---

action or **right to recover a debt** or money." (emphasis added)

**6.** INB does not claim Prudential–Bache breached an implied warranty of title, i.e. that Prudential–Bache did not hold legal title to the Agreement when assigning to INB. INB only claims what was assigned was not a valid, genuine, existing obligation. The trial court in a letter explaining his ruling found, "[t]here is no warranty of title since the representations relied on were DHS representations." In light of the difference between an implied warranty of title and that of genuineness and validity the trial court's explanation seems faulty. A good general discussion of the difference between the implied warranty of title and that of genuineness and validity is found at 6A C.J.S. *Assignments* § 90, pp. 746–747 (1975). There it is said concerning the im-

plied warranty of title, "[t]he assignor impliedly warrants that he has title to the chose in action assigned and a right to pass to the assignee what his assignment purports to pass; and if he lacks title, he is liable to the assignee." (citations omitted) *Id.* at 746. Concerning the implied warranty of genuineness and validity it is said, "[i]n the absence of facts showing a contrary intention, and except where he has expressly declined to make such a guaranty or warranty ... the assignor of a chose in action, for a valuable consideration, impliedly warrants to the assignee that the chose actually exists, is genuine and not a forgery, and is a valid, subsisting obligation in his favor against the debtor to the extent to which it purports to be such." (citations omitted) *Id.*

This is a restrictive assignment; one without recourse. . . . It exempts the assignor from liability by reason of the insolvency of the maker; and if the bond is genuine, and the amount of money it calls for was owing and unpaid at the time of the assignment, then the assignee is not entitled to recourse the bond by reason of any failure or inability on his part to make the money; that is, the assignee thereby took upon himself all risk of collecting the money, provided it was in fact what it seemed to be,—a genuine, valid, subsisting debt.

*Houston v. McNeer*, 40 W.Va. 365, 22 S.E. 80, 82 (1895).

■ We agree with the general law on this subject that the term "no recourse" or "without recourse" in an assignment does not, without more, evidence an intent to disclaim the implied warranty of genuineness and validity, but is meant only to make clear the assignor does not guarantee the debtor's solvency or that the debtor will fulfill his obligation. We next turn to Prudential–Bache's argument based on the language contained in paragraph 1 of the assignment that what it was assigning was only "all right, title and interest of Prudential–Bache" and this language should be deemed a disclaimer of the warranty.

Although such words have been held by us to disclaim an implied warranty of title in a case involving the assignment of an oil and gas lease, where the assignee has knowledge of a prior existing lease [*Tupeker v. Deaner*, 46 Okla. 328, 148 P. 853 (1915) ]; we conclude in the context of this case such words alone are insufficient to disclaim the implied warranty of genuineness and validity espoused by us in *Logan County Bank*.[7]

■ Undoubtedly, as WILLISTON ON CONTRACTS § 445 makes clear, the parties to an assignment may by express agreement limit both the implied warranties of title, and

genuineness and validity. Further, the facts and circumstances of the transaction, coupled with some apt language of disclaimer may be sufficient to show a disclaimer. *Gould v. Bourgeois*, 51 N.J.L. 361, 18 Atl. 64 (1889). We do not believe in this case, however, the language pointed to by Prudential–Bache in the assignment can be said as a matter of law at the pleading stage to be an express agreement disclaiming the implied warranties.

As we read the assignment and documents accompanying it (i.e. the Prospectus, etc.) they appear, at a minimum, to raise a question of fact whether they were intended to convince a prospective purchaser of the Agreement that Prudential–Bache held legal title to the Agreement and that the Agreement was valid and enforceable according to its terms. Numbered paragraph 2 of the assignment assigns a security interest in the computer equipment from Prudential–Bache to INB; numbered paragraph 4 indicates Prudential–Bache has authorized and directed DHS to make payments under the Agreement directly to INB. At this early stage of the litigation these clauses would seem inconsistent with determining as a matter of law that the implied warranties have been disclaimed. Furthermore, at the pleading stage, a fact question appears to be raised by the entire tenor of the Prospectus which again seems geared toward convincing a purchaser the Agreement is genuine, legal, valid and enforceable against DHS according to its terms.

■ The fallacy of Prudential–Bache's argument is shown by its own appellate brief. There, at page 11, it says, "[b]y repeating the legal opinion of DHS counsel and representations of state representatives [regarding the validity and enforceability of the Agreement], [Prudential–Bache] **implicitly** disclaimed any personal responsibility for the reliability or truth of the representations". (emphasis

---

7. *Tupeker*, involving as it did an interest in an oil and gas lease, i.e. a chattel real, as opposed to the sale of personal property or the assignment of a chose in action, distinguished *Clevenger v. Lewis*, 20 Okla. 837, 95 P. 230 (1908), which set the general rule that a sale of personalty in the vendor's possession implies a warranty as to the entire title, protecting against partial defects, liens, charges, and encumbrances by which the title transferred is rendered anything less than full, perfect and unencumbered. *Tupeker*, 148 P. at 853. The general rule was followed in *Doenges Motors, Inc. v. Bankers Investment Company*, 369 P.2d 611 (Okla.1962) (implied warranty of title and validity extends not only to the chose or debt itself, but also to collateral securities or rights which pass by assignment as incidents).

added) For us to uphold the dismissal of the implied warranty theory at this stage of the litigation we must find an express disclaimer in the petition (or really documents accompanying it), not an **implicit** one. We must be able to say as a matter of law the implied warranty was disclaimed by express agreement of the parties or by the manifest intention of these documents, not that it was **implicitly** disclaimed. We do not find such an express agreement or manifest intention in the documents attached to the petition.

Therefore, INB's claim for breach of implied warranty, accepting as true all factual allegations and reasonable inferences, should not have been dismissed for failure to state a claim upon which relief could be granted.

## SECURITIES VIOLATION

 The trial court dismissed INB's claim brought via the federal Securities Act of 1933 on the basis no security was involved.[8] INB claims the Agreement is a security because it is an evidence of indebtedness. Prudential–Bache essentially argues the face of the petition shows the Agreement does not properly fall under any category within the definition of a security and that the Agreement and the transaction involving the assignment of it to INB concerned merely a commercial transaction, rather than an investment one, which was outside the protection of the securities laws.[9] In our view, there is insufficient information to make a determination of whether the instrument and the transaction involving it concerned the sale of a security and the trial court erred in dismissing INB's claim.

15 U.S.C. § 77b(1) provides as follows:

[U]nless the context otherwise requires—

(1) The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

 In construing this definition and the instruments which fall within it certain underlying principles enunciated by the United States Supreme Court are helpful. The fundamental purpose of the federal Securities Acts was to eliminate serious abuses in a largely unregulated securities market. *Reves v. Ernst & Young*, 494 U.S. 56, 60, 110 S.Ct. 945, 948, 108 L.Ed.2d 47, *reh. denied*, 494 U.S. 1092, 110 S.Ct. 1840, 108 L.Ed.2d 968 (1990), citing *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621, *reh. denied*, 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 115 (1975). In bringing regulation to the securities market Congress painted with a broad brush, recognizing the virtual limitless human ingenuity in creating countless and varied schemes by which individuals seek to use the money of others on the promise of profits. *Reves*, 494 U.S. at 60–61, 110 S.Ct. at 948–949 citing *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244, *reh. denied*, 329 U.S. 819, 67 S.Ct. 27, 91 L.Ed. 697 (1946). However, even though Congress intended for the reach of the Act to

---

8. A state court has concurrent jurisdiction with federal courts to hear claims brought under the 1933 Act. 15 U.S.C. § 77v(a); *First Nat'l City Bank New York v. Smith*, 531 P.2d 321 (Okla. 1975).

9. Prudential–Bache argues INB should have argued the Agreement and assignment thereof was an investment contract, a category Prudential–Bache says is a catchall phrase plaintiffs use to try to bring themselves under the federal securities laws. Prudential–Bache then goes on to argue that the situation does not involve an investment contract subject to the securities laws.

cover a broad range it did not intend to provide a broad federal remedy for fraud. *Marine Bank v. Weaver,* 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982). The Supreme Court recognized this latter point in *Marine Bank* because the definition of security is preceded by the phrase "unless the context otherwise requires". *Id.* The bottom line in interpreting the term security is that form should be disregarded for substance and the emphasis should be on the economic realities of the situation. *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). It should always be remembered that Congress' purpose in enacting the securities laws was to regulate investments, no matter what the form or name given to the instruments used to facilitate a transaction. *Reves,* 494 U.S. at 61, 110 S.Ct. at 949.

The Supreme Court has further ruled that some instruments are obviously within the class Congress intended to regulate because by their very nature they are securities [*Reves,* 494 U.S. at 62, 110 S.Ct. at 949] and an example of such an instrument would be common stock when it actually bears the normal characteristics usually associated with stock. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 686–688, 105 S.Ct. 2297, 2301–2303, 85 L.Ed.2d 692 (1985).[10] Other situations cannot be treated as simply as one involving stock, however, because they involve unusual instruments not easily characterized as securities. *Landreth,* 471 U.S. at 690, 105 S.Ct. at 2304. Such instruments seem to fall within a gray area. *See Securities and Exchange Commission v. Joiner Leasing Corp.,* 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943) (oil leases); *Reves,* 494 U.S. at 62–63, 110 S.Ct. at 949–950 (notes may have widely varying characteristics depend-ing on whether issued in consumer context, commercial paper or in some other investment context).[11] In such gray areas important factors for a court to consider are the character the instrument is given in commerce, the plan of distribution and the economic inducements held out to a prospective purchaser. *Joiner Leasing Corp.,* 320 U.S. at 352–353, 64 S.Ct. at 124–125.

As we understand the various rules set forth by the Supreme Court in the securities area, although the name given an instrument may be relevant, the primary factor in determining whether an instrument is a security covered by the Act must turn on the economic realities of the transaction, not the name appended thereto. *Forman,* 421 U.S. at 849–850, 95 S.Ct. at 2059–2060. Further, it is particularly appropriate to look at the economic reality of the situation when an instrument is of an unusual type not easily characterized as a security. *Landreth,* 471 U.S. at 690, 105 S.Ct. at 2304.

In our view, the instruments before us are of an unusual type not easily characterized as securities. The situation here at first glance appears to involve merely the assignment of a lease-purchase agreement in a one-on-one commercial transaction, but a closer look appears to show certain characteristics of an investment nature. INB, it must be remembered, parted with apparently $2 million dollars in the hopes of gaining a substantial profit should the Agreement have been carried out over the expected sixty (60) month period. In such a situation (i.e. one involving a gray area) we believe the determination of whether the instruments and the overall transaction involved the sale of a security should more properly be a factually based determination, not one that can be decided as a matter of law in the context of a

---

**10.** With an instrument such as stock the economic realities of the situation may still be important, however, when the instrument does not bear the usual characteristics associated with the name, as when the instrument, rather than being an investment for profit, is really only a method by which eligible persons are allowed to participate in a low-cost housing program. *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 858–859, 95 S.Ct. 2051, 2063–2064, 44 L.Ed.2d 621, *reh. denied,* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 115 (1975).

**11.** In the case of notes dealt with in *Reves* the United States Supreme Court set up a specific test known as the family resemblance test which it borrowed from the United States Court of Appeals for the Second Circuit. *See Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126 (2nd Cir.1976); *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930 (2nd Cir. 1984), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984).

§ 2012(B)(6) motion to dismiss for failure to state a claim upon which relief could be granted. *See Crowley v. Montgomery Ward & Co., Inc.*, 570 F.2d 875, 877 (10th Cir.1975); *In re Longhorn Securities Litigation*, 573 F.Supp. 255, 266 (W.D.Okla.1983).

■ This is not to say that it might not be proper to decide the matter at a subsequent time based on summary judgment procedures. In fact, if there is eventually no dispute on the facts relevant to a determination of whether a security was involved it would be appropriate to dispose of this theory of liability by such method. *Cocklereece v. Moran*, 532 F.Supp. 519, 525 (N.D.Ga.1982). Only at such time do we believe it might be appropriate to make a detailed analysis of whether the instruments and the overall economic reality of the transaction should be considered within the reach of the federal Securities Act of 1933.[12]

We, thus, hold it was error for the trial court to dismiss the federal securities' theory of liability at such an early stage based on its view the transaction did not involve a security.

## CONCLUSION

We hold INB stated claims against Prudential–Bache upon which relief could be granted under the theories of implied warranty and securities violation under the federal Securities Act of 1933. Thus, the trial court erred in granting Prudential–Bache's motion to dismiss. Accordingly, we **REVERSE** the judgment of the trial court and **REMAND** for further proceedings.

HODGES, C.J., and HARGRAVE, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

SIMMS, J., concur in part; dissent in part.

WATT, J., dissents.

---

**12.** We express no opinion on whether the Agreement and the assignment of it is either an evidence of indebtedness (as argued by INB) or an investment contract (see note 9, *supra*). These

---

determinations must be made in the first instance by the trial court on a more fully developed record.