2006 OK CIV APP 144

Ronald MOREHOUSE,
Plaintiff/Appellant,

v.

STATE of Oklahoma, Oklahoma City
Community College, Defen-
dants/Appellees.

No. 103,605.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Oct. 24, 2006.

Robert E. Norman, Richard L. Rose, Miller Dollarhide, Oklahoma City, OK, for Plaintiff/Appellant.

Nathan L. Whatley, Blake Sonne, McAfee & Taft, Oklahoma City, OK, for Defendants/Appellees.

Opinion by KEITH RAPP, Vice Chief Judge.

¶ 1 The trial court plaintiff, Ronald Morehouse (Morehouse), appeals an order dismissing his action against the trial court defendants, State of Oklahoma, Oklahoma City Community College (OCCC).[1] This appeal proceeds under the accelerated appeal provisions of Okla. Sup.Ct. R. 1.36, 12 O.S. Supp., ch. 15, app.

## BACKGROUND

¶ 2 Morehouse was employed by OCCC as a security officer. OCCC terminated the employment.[2] Morehouse alleged that his termination by OCCC was the result of age discrimination and thus a wrongful termination.[3]

¶ 3 OCCC moved to dismiss the action for failure to state a claim. Both parties acknowledge the public policy exception to the termination-at-will rule as recognized in *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24 (*Burk* tort). However, OCCC's motion argued that Morehouse cannot state a claim for wrongful discharge because he had a statutory remedy under the Oklahoma Personnel Act (OPA), 74 O.S.2001, §§ 840–1.1 *et seq.*[4]

¶ 4 Morehouse responded that he had no action under the federal Age Discrimination in Employment Act by virtue of United States Supreme Court decision.[5] He argued further that he had no state statutory remedy on the premise that OCCC was not covered by the OPA because it is an institution of higher learning.[6] As additional support for this argument, Morehouse argued that OCCC relied on it being an institution of higher learning to prevail in dismissing Morehouse's federal lawsuit against it. He further maintained that he was an unclassified employee under the OPA and thus not subject to its provisions.

¶ 5 The trial court dismissed the action. Morehouse appeals.

## STANDARD OF REVIEW

¶ 6 A trial court's dismissal for failure to state a claim upon which relief can be granted involves a *de novo* review to ascertain whether the petition, including its exhibits, is legally sufficient. *Indiana Nat'l Bank v. State Dept. of Human Servs.*, 1994 OK 98, ¶ 2, 880 P.2d 371, 375. The petition is a short and plain statement of the claim and a demand for judgment. 12 O.S.2001, § 2008. The Court must take as true all of the chal-

---

1. Although the dismissal order does not speak to whether Morehouse may amend under 12 O.S. Supp.2005, § 2012(G), it is clear from the record that the dismissal is final.

2. Under the termination-at-will doctrine, an employee with an employment contract of indefinite duration is free to leave his or her employment for any reason or no reason without incurring liability to the employer, and the employer has the corresponding freedom to terminate the at-will employee for any reason or no reason without incurring liability to the employee. *McCrady v. Oklahoma Dept. of Public Safety*, 2005 OK 67, ¶ 6, 122 P.3d 473, 474–75.

3. Although OCCC disputes the basis for the termination, nevertheless for purposes of a dismissal motion for failure to state a claim the allegations are taken as true.

4. The existence of a remedy removes the action from the *Burk* tort exception to the termination-at-will doctrine. *Clinton v. State ex rel. Logan County Election Bd.*, 2001 OK 52, ¶ 10, 29 P.3d 543, 546.

5. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). OCCC does not disagree.

6. Institutions coming under the State Board of Regents are within the State Constitution's mandate of self-governing entities, so statutes such as the OPA do not apply to them. *State ex rel. Board of Regents of OSU v. Oklahoma Merit Protection Comm'n.*, 2001 OK 17, 19 P.3d 865.

lenged pleading's allegations, together with all reasonable inferences which may be drawn from them. *Indiana Nat'l Bank,* 1994 OK 98 at ¶ 3, 880 P.2d at 375. Moreover, such motions are not favored. *Id.,* 1994 OK 98 at ¶ 4, 880 P.2d at 375.

█ ¶ 7 Therefore, a pleading must not be dismissed for failure to state a claim unless the allegations show beyond any doubt that the litigant can prove no set of facts which would entitle him to relief. *Id.,* at ¶ 3, 880 P.2d at 375. The burden is upon the movant to demonstrate legal insufficiency and the motion must comply with the statutory format. 12 O.S. Supp.2005, § 2012(B); *Indiana Nat'l Bank,* 1994 OK 98 at ¶ 3, 880 P.2d at 375. A plaintiff need not identify either a specific theory or set out the correct remedy in order to prevail on the motion to dismiss. The trial court's task is to inquire whether relief is possible under any set of facts that could be established consistent with the allegations. Generally a motion to dismiss may be sustained for two reasons: (1) lack of any cognizable legal theory, or, (2) insufficient facts under a cognizable legal theory. *Id.,* 1994 OK 98 at ¶ 4, 880 P.2d at 375–76.

## ANALYSIS AND REVIEW

█ ¶ 8 A plaintiff, to bring himself within the ambit of a *Burk* tort claim, must establish: (1) a clear, compelling public policy goal that is established, existing law by virtue of statute or judicial decision; (2) no statutory remedy exists to protect that policy goal; (3) at-will employment; and, (4) the reason for termination violated the identified public policy goal. *McCrady,* 2005 OK 67 at ¶ 9, 122 P.3d at 475. It is undisputed that age dis-

crimination constitutes a public policy goal, the violation of which would give rise to a *Burk* tort if the other elements are present. Next, for purposes of the motion to dismiss, elements three and four are taken as true.

¶ 9 Thus, if Morehouse has a remedy under the OPA, his action fails as a matter of law. It is clear that the OPA does provide a remedy which will preclude existence of the *Burk* tort in those instances where the OPA applies. *McCrady,* 2005 OK 67 at ¶¶ 11–12, 122 P.3d at 475–76. Morehouse argues that the OPA does not apply to him because he is an unclassified employee. Next, he maintains that the OPA does not apply to OCCC, and thus not to him.

### A. Application of OPA to Morehouse

█ ¶ 10 The sole function here of *McCrady* is to establish that the OPA provides a remedy which precludes a *Burk* tort. Otherwise, the case is distinguishable on its facts and does not resolve the issues here. The plaintiff, *McCrady,* was a classified employee and thus not an employee-at-will, so *McCrady* lacked this element of his claim. Here, there is no dispute that Morehouse is an unclassified employee-at-will.[7]

¶ 11 In addition, *McCrady* did come under the OPA as a classified employee. The OPA provides that unclassified employees are not covered by the Act "unless otherwise provided." 74 O.S.2001, § 840–5.1.[8] The statutes do make provision for OPA application to unclassified employees in matters involving age discrimination. 74 · O.S.2001, § 954.[9] Moreover, an Attorney General Opinion concludes that the anti-discrimination and whistle blower provisions of the OPA apply to the unclassified employee. 1999 OK AG 44.

---

7. Morehouse's petition, as amended, does not allege unclassified employee status, so this "fact" constitutes "matter outside the pleading." Under 12 O.S. Supp.2005, § 2012(B), the motion to dismiss should be transformed into a summary judgment and proceed accordingly. However, in light of the fact that his status as an unclassified employee is not disputed, this Court will consider the status as implied in the petition's allegations and review the case as a dismissal for failure to state a claim. Unclassified employees are at-will employees. 74 O.S. Supp.2005, § 840–5.1A(A).

8. Section 840–5.1 states in part:
*Unless otherwise provided,* offices and positions in the unclassified service are in no way sub-

ject to any of the provisions of this act or of the rules and regulations, promulgated hereunder except leave regulations. Emphasis added.

9. Section 954 provides:
*It is hereby prohibited for any department or agency of the State of Oklahoma,* or any official or employee of the same for and on behalf of the State of Oklahoma: to refuse to employ or *to discharge any person, otherwise qualified,* on account of race, color, creed, national origin, *age,* handicap, or ancestry; to discriminate for the same reasons in regard to tenure, terms, or conditions of employment; to deny promotion or increase in compensation solely for these reasons; to publish an offer of employment

¶ 12 Therefore, this Court holds that the OPA provides a statutory remedy for claims of age discrimination.[10] The "no statutory remedy" element of the *Burk* tort is not present here as a matter of law.

## B.  Application of OPA to OCCC

¶ 13 Morehouse argues then that the OPA does not apply to OCCC. He cites *State ex rel. Board of Regents v. Oklahoma Merit Protection Commission,* 2001 OK 17, 19 P.3d 865. There, the Supreme Court granted a writ of prohibition directing the Commission to cease exercising jurisdiction over the Board and other petitioners because they are constitutional entities. As such, they are "empowered by Art. 13–A §§ 1 and 2 as well as Art. 13–B §§ 1 and 2, Okl. Const., to conduct the internal affairs of their subordinate institutions of higher learning *free of any interference* by the Oklahoma Merit Protection Commission. The Legislature is powerless to delegate the petitioners' constitutional control over the management of their institutions to any department, commission or agency of state government." *State ex rel. Board of Regents,* 2001 OK 17 at ¶ 1, 19 P.3d at 865–66; *see also* 1995 OK AG 12, (where the Attorney General reaches the same conclusion with respect to whether a hiring freeze may be imposed upon constitutional entities empowered to manage their own affairs). In summary, Morehouse equates OCCC to the constitutional Boards together with the authority of those Boards as self-governing.[11]

¶ 14 The Attorney General, in 1995 OK AG 12 at ¶¶ 22–24, 39(1), distinguished constitutional Boards of Regents from statutory Boards of Regents. The Opinion concluded that the hiring freeze could be imposed upon the statutory Boards of Regents. The Board of Regents for OCCC was one such statutory Board and thus included in the hiring freeze. 70 O.S.2001, § 4423.[12] The Attorney General reasoned as follows:

> The power vested in all these Boards of Regents or Boards of Trustees is solely statutory power, unlike the situation pre-

based on such discrimination; to adopt or enforce any rule or employment policy which so discriminates as to any employee; or to seek such information as to any applicant or employee or to discriminate in the selection of personnel for training solely on such basis. These provisions shall be cumulative and in addition to existing laws relating to discrimination in the classified service.
*It shall be the duty of the Oklahoma Merit Protection Commission to investigate,* upon its own initiative, *upon complaint filed by any aggrieved person,* or upon complaint filed by the Human Rights Commission, *any violation of this section and to enforce compliance with the same, both in the classified and the nonclassified service.* The Human Rights Commission shall investigate, upon its own initiative or on complaint filed with it, any such violation and may file a formal complaint with the Oklahoma Merit Protection Commission. When any complaint is filed by the Human Rights Commission with the Oklahoma Merit Protection Commission, the Oklahoma Merit Protection Commission shall set a hearing on the same, at which hearing the Director of the Human Rights Commission, or his representative, may appear and present the finding of the Commission in regard to such violation. In the enforcement of this section, the Oklahoma Merit Protection Commission shall follow the provisions of existing laws relating to hearings, procedures, and notices, and shall have power to enforce its orders pertaining to violations of

this section as is provided by law in regard to the classified service. Emphasis added.

10.  Thus, it is not necessary to decide whether the federal law provides a remedy.

11.  The Legislature is restricted from limiting the governing powers of these constitutional Boards. *Board of Regents of the University of Oklahoma v. Baker,* 1981 OK 160, 638 P.2d 464.

12.  This statute provides:

A.  The Oklahoma State Regents for Higher Education are hereby authorized and directed to maintain two-year colleges at El Reno, which shall be known as the Redlands Community College, at Poteau, which shall be known as the Carl Albert State College, at Seminole, which shall be known as the Seminole State College, at Midwest City, which shall be known as the Rose State College, *and in South Oklahoma City, which shall be known as the Oklahoma City Community College;* and, each of said colleges shall be an integral and full-fledged part of The Oklahoma State System of Higher Education.

B.  Each of said colleges which at the time it became a member of the State System was operating a technical area school district program to carry out the function of postsecondary technical education for the people of the district shall continue to do so as then operated and in accordance with Section 4410 of

sented by the constitutionally created Boards of Regents. Thus, none of the power vested in the statutory boards constitutes a restriction or limit on the Legislature's power. Accordingly, the Legislature possesses the power to authorize the Governor to include the institutions managed by these boards within any hiring freeze commenced under the provisions of 74 O.S. Supp.1995 § 840–2.14.

¶ 15 The Attorney General, in 1992 OK AG 10, also distinguished statutory Boards of Higher Education from constitutional Boards of Higher Education. In this Opinion, the Attorney General stated that boards created by statute are subject to the law-making power of the Legislature. The Opinion concluded that the statutory prohibition against payment by the State for certain moving expenses of employees did apply to the statutory Boards but did not apply to the constitutional Boards.

¶ 16 This Court agrees with the analysis and conclusion by the Attorney General. Therefore, this Court holds that the OPA and the remedy available thereunder for complaints involving discrimination, including age discrimination, applies to OCCC because it is a statutory agency.

¶ 17 Therefore, the judgment of the trial court dismissing the action is affirmed.

¶ 18 AFFIRMED.

GABBARD, P.J., and REIF, J., concur.

Title 70 of the Oklahoma Statutes, and all property acquired by virtue of the technical area school district operation shall remain as property of the technical area school district and be maintained in the custody of the Board of Regents of the college acting as the governing board of the technical area school district for use by the postsecondary area district program.

C. For each of the colleges above named and identified, there shall be created a separate Board of Regents, and said Board of Regents shall consist of seven (7) members to serve seven-year overlapping terms, with members of said Board to be appointed by the Governor by and with the advice and consent of the State Senate. Each Board shall have the same powers and duties as the Board of Regents of Tulsa Junior College. Four members of the Board of Regents for the colleges located at El Reno, Poteau and Seminole shall be from the county in which said college is located. Four members of the Board of Regents for Rose State College and Oklahoma City Community College shall be residents of the original district of each of said colleges. With respect to Rose State College and Oklahoma City Community College, it is further provided that the college and its governing Board of Regents shall continue to operate the technical area school district program to carry out the function of postsecondary technical education for the people of the technical education school district as now operated, and in accordance with Section 4410 of Title 70 of the Oklahoma Statutes.