2011 OK CIV APP 28

**Kenneth L. SIMINGTON, Plaintiff/Appellant,**

v.

**Linda PARKER, in her personal and official capacity, and the State of Oklahoma ex rel. Oklahoma Department of Rehabilitation Services, Defendants/Appellees.**

**No. 107,454.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 28, 2011.

Daniel J. Gamino, Daniel J. Gamino & Associates, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Martha L. Kulmacz, Assistant Attorney General, Oklahoma Attorney General, Oklahoma City, OK, for Defendants/Appellees.

WM. C. HETHERINGTON, JR., Presiding Judge.

¶ 1 Plaintiff Kenneth Simington appeals a trial court order granting the motion to dismiss filed by "Defendants Linda Parker and the Oklahoma Department of Rehabilitative Services (DRS)" based on the failure of Simington's petition to state a claim upon which relief can be granted pursuant to 12 O.S.2001 § 2012(B)(6). Based on the following reasons, we affirm the order as to DRS and Parker, in her official capacity, but reverse as to Parker, in her individual capacity.

## PROCEDURAL HISTORY

¶ 2 On September 22, 2008, Simington filed a petition in Oklahoma County District Court, specifically pleading the torts of conversion, fraud/deceit, and intentional infliction of emotional distress against DRS and/or Linda Parker "in her official capacity and in her personal capacity." On October 14, 2008, an assistant attorney general for the State of Oklahoma filed an entry of appearance and a motion to dismiss for "Defendants, Linda Parker and [DRS]" (collectively, DRS),[1] arguing Simington has "an adequate statutory remedy" under the Oklahoma Personnel Act (OPA), 74 O.S.2001 § 840–1.1 *et seq.* and "is barred from bringing this suit" by *McCrady v. Oklahoma Department of Public Safety*, 2005 OK 67, 122 P.3d 473 (*McCrady I*) and *Oklahoma Department of Public Safety v. McCrady*, 2007 OK 39, 176 P.3d 1194 (*McCrady II*).

¶ 3 Simington objected to DRS's § 2012(B)(6) motion, arguing *McCrady I* and *McCrady II* do not apply because his case "is not wrongful discharge." Expressly relying on *McCrady I* and *McCrady II*, the trial court granted DRS's motion to dismiss with prejudice on July 27, 2009. Simington's appeal from that order followed.

## POST–APPEAL ISSUES

¶ 4 After the filing of DRS's Entry of Appearance and Response and the record completed, Simington filed a Brief in Chief. DRS moved to strike Simington's "Opening Brief," arguing he failed to comply with Okla. Sup.Ct.R. 1.36 accelerated procedure for summary judgments and orders granting motions to dismiss for failure to state a claim. *See* 12 O.S.Supp.2004, ch. 15, app. 1. DRS argues the filing of briefs is not permitted by R. 1.36 unless ordered by the Court, and no such permission has been granted in this appeal. DRS also argues Simington did not prepare a record on appeal as required by R.

1.36, but does not seek any specific relief for this alleged non-compliance.

¶ 5 The Supreme Court ordered Simington to respond to DRS's motion to strike. In that response, Simington admitted R. 1.36 "covers appeals from motions to dismiss for failure to state a claim" and also "covers the record on appeal." He justifies filing a brief under R.1.36(c)(B)(6) due to the trial court's express reliance on the aforementioned opinions and further claims the briefs were "submitted to aid the high court in reviewing this appeal." Citing federal authority which holds rules of appellate practice are designed to protect the parties, and appellate courts may relax or modify their procedural rules, Simington requests this court to deny DRS's motion to strike and allow his Brief in Chief to stand.

¶ 6 By order filed March 25, 2010, the Supreme Court deferred consideration, if any, of DRS's motion to strike Simington's brief to this Court.[2] Although we agree with DRS the record submitted to this Court was not prepared in accordance with R. 1.36(d) nor filed "at the same time as the petition in error" as required by R. 1.36(b), we note the record, which contains seven documents including the petition, otherwise complies with that rule as far as the instruments permitted to be included. Simington's argument regarding this Court's discretion is generally correct.

> Compliance with [the Oklahoma Supreme Court Rules] is required. In case of failure to comply with any rule or order of the Court, the Court *may* continue or dismiss a cause, reverse or affirm the judgment appealed, render judgment, strike a filing, assess costs or take any other action *it deems proper.* Okla.Sup.Ct.R. 1.2.

However, we may not ignore the standard of review for this appeal or R.1.36(g), which expressly provides, "[a]n appellate court shall confine its review to the record actually presented to the trial court." Because this gen-

---

1. According to the appearance docket, the entry of appearance was filed on behalf of "Linda Parker, in her official capacity and [DRS]." We note for the record the style on the motion to dismiss includes as defendants only DRS and "Linda Parker, in her official capacity," and the same docket has no entry of a dismissal of Sim-

ington's claims against Parker in her *individual* capacity.

2. As a result, DRS filed an Answer Brief, in which it re-urges its motion to strike. Simington also filed a Reply Brief.

erally includes limiting the issues on appeal to those actually argued below, our review is limited to Simington's petition, Defendants' motion to dismiss and Simington's response to the dismissal motion, neither of which include any evidentiary material. Although DRS requests we strike only Simington's "Opening Brief," all three briefs are stricken from the appellate record and will not be considered.

## STANDARD OF REVIEW

¶ 7 "The standard of review for an order dismissing a case for failure to state a claim upon which relief can be granted is *de novo* and involves consideration of whether a plaintiff's petition is legally sufficient." *Fanning v. Brown*, 2004 OK 7, ¶ 4, 85 P.3d 841, 844. When reviewing a motion to dismiss, we must take as true all of the pleading's allegations together with all reasonable inferences which may be drawn from them. *Id.* "A pleading must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle him to relief." *Id.* The party moving for dismissal pursuant to § 2012(B)(6) has the burden to show the legal insufficiency of the petition. *Indiana National Bank v. State of Oklahoma, Dept. of Human Services*, 1994 OK 98, 880 P.2d 371.

## ANALYSIS

### Simington's Petition

¶ 8 Under the "First Cause of Action—Conversion (76 O.S. § 6 and Common Law)," Simington makes the following allegations: He "was a career employee of Defendant DRS" and ranked as a Program Manager I. As "allowed by law to seek a higher position," he filed an internal grievance, which "Defendant DRS and [Parker] opposed." "On or around May 25, 2006, the Oklahoma Office of Personnel Management (OPM) formally reviewed [his] position and OPM ruled that his position was a Program Manager

II," to which new position "DRS was compelled to promote" him. Almost four months later, "Parker surreptitiously emailed" several OPM officers and colleagues to set up a meeting about Simington. Two business days after the meeting, one of the attending OPM officers advised "OPM would reconsider [his] promotion" and "internally reassigned the case and removed the case from normal channel and personnel of OPM." "On January 5, 2007, OPM reversed its original decision" and "DRS subsequently demoted [him] to Program Manager I." These *same* operative events are incorporated by reference in Simington's "Second Cause of Action—Fraud/Deceit (76 O.S.2001, § 1–3)" *and* his "Third Cause of Action—Intentional Infliction of Emotional Distress (76 O.S.2001, § 6 and Common Law)."

■ ¶ 9 Specific to conversion, Simington alleges:

(1) "Defendant [Parker]" denied any knowledge of the emails and the meeting and denied him of any opportunity to appear;

(2) "[Parker], in her individual capacity, and in her official capacity as Executive Director of [DRS] acted willfully to violate Merit Rule 530: 10–5–58 and to take from [Simington] his allocated position of Program Manager II";[3]

(3) by "the aforesaid acts and omissions Defendant wrongfully and unlawfully exercised dominion and control over [Simington's] personality (sic) in denial of and inconsistent with [his] rights"; and

(4) "Defendant [Parker] individually and in her official capacity ... and Defendant DRS by the aforesaid intentional acts and omission caused [Simington] financial harm and detriment."

¶ 10 As to fraud/deceit, Simington alleges "Parker, in her individual and official capacity ... willfully and deliberately while knowingly [withheld] knowledge from [Simington] of the truth" and "undertook ... the acts and omissions with the intention and purpose

---

**3.** Neither this rule nor the one DRS asserts were incorporated into the record. Appellate courts must take judicial notice of agency rules which are a matter of public record. *Lone Star Heli-* *copters, Inc., v. State*, 1990 OK 111, ¶ 4, 800 P.2d 235, 236. Because this appeal is from an order dismissing Simington's petition for failure to state a claim, we need not review either rule.

... [to] cause [him] financial loss and detriment." His claim of emotional distress against "Defendant [Parker]" states (1) her "acts and omissions" were "extreme and outrageous" and "unreasonable," (2) were undertaken knowing [Simington] would suffer or was likely to suffer emotional distress or [she] acted with wilful disregard of injuries that [he] may suffer," and (3) he "suffered physical injury as a direct result of [her] conduct, to include but not be limited to injuries to nervous system and mental pain, suffering and anguish." At the end of his petition, Simington requests both "actual money damages," damages for emotional distress, and punitive damages as relief from DRS and "Parker in her personal capacity and official capacity."

### The Parties' Arguments For and Against Dismissal

¶ 11 According to DRS, Simington "claims that [his] *demotion was initiated inappropriately* by Parker and others and amounts to conversion, fraud/deceit and intentional infliction of emotional distress." (Emphasis added.) Citing *McCrady v. Oklahoma Department of Public Safety*, 2005 OK 67, 122 P.3d 473 (*McCrady I*) for the proposition that "a classified employee, subject to the [OPA] could not bring a '*Burk*' exception tort claim for wrongful termination" and "classified employees [have] an adequate remedy pursuant to the [OPA]," DRS argues "under the OPA there is adequate statutory remedy and [Simington] is barred from bringing this

suit." After pointing out *McCrady I* "was revisited" in *Oklahoma Department of Public Safety v. McCrady*, 2007 OK 39, 176 P.3d 1194 (*McCrady II*), DRS argues *McCrady II* supports dismissal of Simington's petition because "there are no allegations concerning the findings or decisions of the Oklahoma Merit Protection Commission" and "whether he has sought judicial review .... as suggested by *McCrady II*." [4] In the second part of its motion, DRS argues for dismissal of Simington's "specific causes of action," contending he has not alleged sufficient facts to support any of the three theories of recovery.[5]

¶ 12 Simington argues *McCrady I* and *McCrady II* have no application here because these decisions "revolve around a wrongful termination claim" and his case is "not wrongful discharge." Asserting "DRS Executives' surreptitious violation of State law (Merit Rule: 10–5–58) and clandestine actions resulted in [his] unlawful demotion" and their "unlawful acts amounted to wrongful conversion, fraud and deceit and intentional infliction of emotional distress, Simington argues "[a]ll are uniformly recognized common law ... [and] statutory torts in Oklahoma" and "none have anything to do with wrongful discharge."

### The Trial Court's Order

¶ 13 In the "Nunc Pro Tunc Order Dismissing Petition With Prejudice," filed November 4, 2010,[6] the trial court explains its decision:

**4.** DRS's use of the word "suggested" comes from its reliance on one sentence of the appellate standard of review for final agency orders utilized in *McCrady II*.

**5.** DRS contends: (1) a demotion does not fall within the statutory definition of conversion because Simington's job is not personal property over which dominion was wrongfully exerted in denial of or inconsistent with his rights; (2) both fraud and deceit require reliance on misrepresented statements, which Simington has not alleged; and for dismissal of the emotional distress theory, (3) the "actions of Linda Parker" were not extreme and outrageous because she was authorized by "OAC, 530:10–5–91" to inquire if an employee is properly classified and simply choose to reclassify his position.

**6.** By Order filed October 6, 2010, this Court directed Simington to show cause why this appeal should not be dismissed as premature because the July 27, 2009 Order, from which he brought this appeal, appeared to adjudicate fewer than all parties included as defendants. To comply with this order, Simington, after notifying DRS, commenced trial court proceedings pursuant to Okla.Sup.Ct.R. 1.36 to supplement the record with a corrected order. The November 4, 2010 Nunc Pro Tunc Order, included in the Supplemental Record, is identical to the July 27, 2009 Order Dismissing Petition With Prejudice, except for its finding "the dismissal is therefore granted with prejudice as to all Defendants, including Linda Parker in her official and individual capacity." Concluding the November 4, 2010 Nunc Pro Tunc Order resolves the issues raised by our show cause order, we proceed with review of that order under the accelerated review procedure for § 2012(B)(6) motions to dismiss

The Court, *relying on the reasoning* contained in [*McCrady I*] and [*McCrady II*], hereby finds the Defendants' Motion to Dismiss should be and is hereby granted. The Court finds the defect in the Petition *cannot be remedied by amendment,* and that the dismissal is therefore granted *with prejudice,* as to all Defendants, including Linda Parker in her official and individual capacity. (Emphasis added.)

In order for a court to dismiss a claim for failure to state a cause of action without giving the plaintiff the opportunity to amend, it must appear that the claim does not exist rather than the claim has been defectively stated. *Fanning v. Brown,* 2004 OK 7, ¶ 23, 85 P.3d 841, 848; 12 O.S.Supp.2004 § 2012(G).[7] The dispositive issue is whether *McCrady I* and/or *McCrady II* supports the trial court's dismissal *with prejudice* of Simington's petition against all of the named defendants.

### The Holdings of McCrady
### I and McCrady II

¶ 14 The plaintiff in *McCrady I,* an Oklahoma Highway Patrolman, filed a petition in district court against his former employer, the Oklahoma Department of Public Safety (Department), and its Commissioner, Ricks, in his individual capacity. McCrady claimed Ricks violated his civil rights and accused the Department of intentional infliction of emotional distress and wrongful discharge from employment. The defendants moved for summary judgment, the trial court granted their motions, and McCrady appealed. The Court of Civil Appeals affirmed the summary judgment order in favor of Ricks "on all claims" and in favor of Department on the emotional distress theory, but reversed the order "on the cause of wrongful termination" based on an undisputed issue of fact support-

ing an inference of a retaliatory motive of Department which would violate the public policy expressed in part of the OPA.

¶ 15 The Supreme Court granted Department's petition for certiorari. After discussing its arguments, the doctrine of employment-at-will, and the exception to that doctrine created in *Burk v. K–Mart Corp.,* 1989 OK 22, 770 P.2d 24, the *McCrady I* Court determined McCrady, "a classified employee" under the OPA, "is not an employee-at-will." 2005 OK 67, ¶ 10, 122 P.3d at 475.

¶ 16 The Court in *McCrady I* further explained "[classified employees] are under the *jurisdiction* of the Oklahoma Merit System of Personnel Administration and are protected by detailed rules and procedures concerning *all aspects of the employment relationship,* including the right to appeal from internal agency grievance resolution procedures, *demotions,* suspensions, and involuntary discharge without just cause." (Emphasis added.) *Id.* Considering also the OPA's purpose expressed in 74 O.S.2001 § 840–1.2, the Court disagreed with McCrady's position the OPA's protections for classified employees does not constitute an adequate remedy at law and held "[b]ecause he was "not an employee-at-will, he is not within the class of persons who may bring a claim in tort for wrongful discharge based on the public policy exception to the employment-at-will rule, a *Burk* action." *Id.,* ¶ 12, 122 P.3d at 476.

¶ 17 That specific holding is basically affirmed by the Court in *McCrady II,*[8] which further explains the two cases involve the same basic facts and parties but are entirely different legal claims—a tort action in *McCrady I* and review of an agency order in *McCrady II.*[9] After deciding McCrady's sta-

---

for failure to state a claim. *See Binder v. Shepard's, Inc.,* 2006 OK 17, fn. 4, 133 P.3d 276, 281.

**7.** Section 2012(G) provides, in relevant part, "[o]n granting a motion to dismiss a claim for relief, the court *shall grant* leave to amend *if the defect can be remedied.*"

**8.** As explained by the *McCrady II* Court, "*McCrady I* teaches McCrady is a classified employee, not an at-will employee, and hence may not bring a tort claim for wrongful discharge based

on public-policy exception to the employment-at-will rule." 2007 OK 39, ¶ 5, 176 P.3d at 1198.

**9.** McCrady appealed his second discharge by Department to the Oklahoma Merit Protection Commission (OMPC). Department argued OMPC's administrative law judge was without jurisdiction to entertain the appeal because McCrady was a probationary employee. OMPC's ruling in favor of McCrady and denial of Department's reconsideration motion was affirmed by the district court. The Court of Civil Appeals

tus as a permanent classified employee was a critical issue which was settled in *McCrady I* and could not be reconsidered in the agency proceeding, the Court in *McCrady II* explained, "... as a permanent classified employee, McCrady stands entitled to the full cluster of protections of the Oklahoma Merit Protection Commission and is not subject to discharge without just cause." *Id.*, 2007 OK 39, ¶ 8, 176 P.3d at 1199. The remaining *McCrady II* opinion addresses the Department's certiorari arguments, utilizing the standard of review for agency orders provided by the Administrative Procedures Act, *i.e.*, 75 O.S.2001 § 322.

### *Dismissal Of DRS and Parker In Her Official Capacity*

■ ¶ 18 To dismiss Simington's petition *with prejudice* based on *McCrady I* and *McCrady II*, the trial court apparently concluded (1) the three theories of recovery Simington advanced all arise from the same facts, *i.e.*, his demotion by OPM, and therefore they constitute but a single *Burk* tort claim for wrongful discharge, and (2) he is a permanent classified employee,[10] not an at-will employee, and therefore he may not bring a common-law *Burk* tort claim for wrongful discharge.[11] We disagree only with the first conclusion.

■ ¶ 19 Treating Simington's claim as one *solely* for wrongful discharge fails to consider his petition did not allege an actual or constructive *discharge* by DRS or OPM, which is an "element for a claim of wrongful discharge ... articulated by *Burk* and its progeny." *Vasek v. Board of County Commissioners of Noble County*, 2008 OK 35, ¶ 14, 186 P.3d 928, 932. In this case, Simington merely alleged he was demoted from a higher level.

¶ 20 However, even if it was reasonable for the trial court to construe Simington's allegations as a wrongful discharge tort claim, without alleging either an actual or constructive discharge, the trial court's reliance on *McCrady I* fails to consider the *only* claim before the Supreme Court was McCrady's wrongful discharge claim against the Department. His *remaining* tort claim against the same defendant, intentional infliction of emotional distress, was summarily adjudicated by the trial court in the Department's favor, specifically addressed and affirmed by the Court of Civil Appeals, and not appealed. Although the Supreme Court vacated the appellate court's reversal of the trial court's summary adjudication of the wrongful discharge claim, deciding McCrady was not an at-will employee and could not bring a common-law *Burk* tort claim for wrongful discharge, the Court in *McCrady I* expressly affirmed the appellate court's decision on all other issues. Therefore, *McCrady I* must be interpreted as precluding *only* a wrongful discharge tort claim filed by a classified employee against his state employer, and not as authority for dismissing all tort claims in

---

vacated the latter order with instructions to dismiss the OMPC proceeding because McCrady was "a probationary employee whose employment was subject to termination with no right of appeal." *McCrady II*, 2007 OK 39, ¶ 5, 176 P.3d at 1198. The Supreme Court granted McCrady's petition for certiorari, held issue preclusion barred Department's second attack of McCrady's employment status, and found the final agency order was error free.

**10.** The petition simply describes Simington as a "career employee," however, considering DRS's motion to dismiss and Simington's response, there does not appear to be any dispute that he is an "permanent classified employee" under the OPA. *See Morehouse v. State ex rel. Oklahoma City Community College*, 2006 OK CIV APP 144, ¶ 10, 150 P.3d 395, 397.

**11.** It is unclear from the order if the trial court may have further based the dismissal on Siming-

ton's failure to plead and/or exhaust his administrative remedies. We do not address that issue due to facts arising during the pendency of this appeal, of which we may take cognizance and which we conclude have a direct impact on that issue and makes it moot. *See Northeast Oklahoma Electric Co–Op., Inc. v. State ex rel. Corporation Commission*, 1991 OK 28, ¶ 7, n. 6, 808 P.2d 680, 683. Neither party informed the trial court or this Court that Simington had in fact appealed OPM's decision to the Merit Protection Commission *and* then appealed that final agency order to the district court 7 months *before* he filed this tort action. These facts, *inter alia*, were recited in an opinion by another appellate division which reversed the district's court reversal of the agency order denying Simington's attorney fee request. *See Kenneth L. Simington v. Oklahoma Department of Rehabilitation Services and Oklahoma Merit Protection Commission*, 2010 OK CIV APP 108, 241 P.3d 1144 (mandate issued Nov. 14, 2000.)

general. To the extent Simington's petition raises a claim for wrongful discharge and the trial court relied on *McCrady I* to dismiss such claim with prejudice, we must affirm. However, we conclude *McCrady I* does not support the trial court's dismissal of Simington's specifically plead tort theories against DRS and Parker, in her official capacity.

¶ 21 Regardless, this conclusion does not require reversal of the trial court's dismissal order. Although based on wrong reasons, a trial court's judgment must be affirmed if the result is correct. *Wright v. Grove Sun Newspaper Co. Inc.*, 1994 OK 37, ¶ 18, 873 P.2d 983, 992.

¶ 22 As to Simington's remaining tort claims against DRS and Parker, in her official capacity, jurisdiction is a fundamental question, and this Court is required to "inquire into its own jurisdiction and the jurisdiction of the court below [from which] the case came by appeal. This duty exists whether or not the issue of jurisdiction is raised by the parties." (Citations omitted.) *Burghart v. Corrections Corporation of America*, 2009 OK CIV APP 76, ¶ 11, 224 P.3d 1278, 1281.

¶ 23 In Oklahoma, the Governmental Tort Claims Act (GTCA), 51 O.S.2001 §§ 151 *et seq.*, "is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort." *Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 7, 212 P.3d 1158, 1163. Whether the Governmental Tort Claims applies to an action presents a jurisdictional question which appellate courts may address *sua sponte*.[12] *Chambers v. City of Ada*, 1995 OK 24, 894 P.2d 1068.

¶ 24 We first conclude the trial court properly dismissed Parker, in her official capacity. Filing a tort claim against an employee *in his or her official capacity* is an attempt to impose liability upon the governmental entity under the GTCA, which is dependent upon an employee acting in the scope of his or her employment. *Pellegrino v. State ex rel. Cameron University*, 2003 OK 2, ¶ 6, 63 P.3d 535, 537. For this type of tort claim, designation of an employee in his or her official capacity is improper. *Id.*; 51 O.S.2001 § 163(C). Because Simington sued DRS, which is a state agency under the GTCA, it was improper to designate Parker in her official capacity as a named defendant. *Speight v. Presley*, 2008 OK 99, ¶ 20, 203 P.3d 173, 179. Therefore, DRS was the only proper defendant in this tort action.

¶ 25 Regarding dismissal of DRS, suit against a governmental entity under the GTCA must be based upon the claimant presenting written notice of a claim within one year of the date the loss occurs, or the claim is forever barred. *Pellegrino v. State ex rel. Cameron University*, 2003 OK 2, ¶ 6, 63 P.3d 535, 537. A petition must factually allege compliance with the GTCA's notice provisions. *Willborn v. City of Tulsa*, 1986 OK 44, ¶ 5, 721 P.2d 803, 805; *Girdner v. Board of Commissioners of Cherokee County*, 2009 OK CIV APP 94, ¶ 19, 227 P.3d 1111(mandate issued November 19, 2009).

¶ 26 Simington does not allege he gave DRS notice of his claim as required under the GTCA, which specific facts are "necessary to invoke the power of the trial court to remedy the alleged tortious wrongs" by DRS. *Girdner*, ¶ 23. Like the petitions and record in *Girdner*, Simington's petition and the record in this case "is silent as to whether he, in fact, followed the notice provisions of the GTCA and timely filed his petition after denial of the claim." *Id.* Following the Court's holding in *Girdner*, we **affirm** that part of the trial court's order dismissing Simington's petition *as to* Defendants DRS and Linda Parker, in her official capacity, **reverse** the order to the extent it dismisses the petition against DRS "with prejudice," and remand the matter to the trial court with instructions to ascertain un-

---

12. The following "finding" demonstrates the trial court did not consider the Governmental Tort Claims Act in reaching its decision to dismiss with prejudice:

The Court further finds *if the Motion to Dismiss had not been granted based upon the McCrady reasoning*, this Court would have sustained the Motion to Dismiss as to [Simington's] Conversion Cause of Action, as to all Defendants, including Linda Parker in her official and individual capacity, but would have denied it as to the Fraud/Deceit and Intentional Infliction of Emotional Distress.

der 12 O.S.Supp.2004 § 2012(G) whether Simington can remedy the defect regarding failure to plead compliance with the GTCA.

### Dismissal Of Linda Parker, In Her Individual Capacity

¶ 27 To the extent the trial court relies on *McCrady I* and *McCrady II* to dismiss Simington's tort claims against Parker in her individual capacity, that part of the order must be **reversed**. We find both cases inapplicable on this issue. Clearly *McCrady II* did not involve any tort claims, only review of an agency order. In *McCrady I*, although the Department's Commissioner was sued in his individual capacity, the plaintiff's civil rights violation claim against that defendant was summarily adjudicated by the trial court, affirmed by the Court of Appeals, and never appealed. Therefore, the holding in *McCrady I*—a classified employee is not an at-will employee and may not bring a *Burk* tort claim for wrongful discharge—cannot be interpreted to preclude Simington's common law tort claims against Parker, in her *individual* capacity.

¶ 28 Unlike the jurisdictional issue remanded to the trial court to determine whether Simington complied with the notice requirements of the GTCA, "the procedural requirements of the [GTCA] for presenting claims to governmental entities do not apply to tort claims against a governmental employee when plaintiff's claim is based upon allegations that the employee's acts were outside the scope of his or her employment."

*Pellegrino v. State ex rel. Cameron University,* 2003 OK 2, ¶ 6, 63 P.3d 535, 539. Based on our review of his petition, Simington's claims as pled against Parker personally also appear to be based upon allegations that her actions were outside the scope of her employment. The trial court's order dismissing Simington's claims against Parker, in her individual capacity, is **reversed** and remanded for further proceedings.

### CONCLUSION

¶ 29 The trial court's order dismissing Simington's petition against Parker, in her official capacity, is **AFFIRMED.** That part of the order dismissing DRS is **AFFIRMED** but the "with prejudice" part of that dismissal is **REVERSED** and the matter is **REMANDED** to the trial court with instructions to ascertain under 12 O.S.Supp.2004 § 2012(G) whether Simington can remedy the defect regarding failure to plead compliance with the GTCA. The same order which dismisses Parker, in her personal capacity, is **REVERSED AND REMANDED** for further proceedings consistent with this opinion.

BELL, C.J., and HANSEN, J., concur.